FILED by ___ D.C.

ELECTRONIC

**JuL 12, 2011**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. <u>09-21010-CR-JEM(s)</u>
### 18 U.S.C. § 371
### 15 U.S.C. § 78dd-2(a)
### 18 U.S.C. § 2
### 18 U.S.C. § 1956(h)
### 18 U.S.C. § 1956(a)(1)(B)(i)
### 18 U.S.C. § 981(a)(1)(c)
### 18 U.S.C. § 982(a)(1)

## UNITED STATES OF AMERICA

## vs.

## WASHINGTON VASCONEZ CRUZ,
## AMADEUS RICHERS,
## CINERGY TELECOMMUNICATIONS, INC.,
## PATRICK JOSEPH,
## JEAN RENE DUPERVAL,
## and
## MARGUERITE GRANDISON,

### Defendants.
_____/

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

At all times relevant to this Superseding Indictment, unless otherwise specified:

## GENERAL ALLEGATIONS

### *Legal Background*

1.      The Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. § 78dd-l, *et*

*seq.* ("FCPA"), prohibited certain classes of persons and entities from corruptly making payments

to foreign government officials to assist in obtaining or retaining business.  Specifically, the FCPA

prohibited  certain  corporations  and  individuals  from  willfully  making  use  of  any  means  or

instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of money or anything of value to any person, while knowing that all or a portion of such money or thing of value would be offered, given, or promised, directly or indirectly, to a foreign official to influence the foreign official in his or her official capacity, induce the foreign official to do or omit to do an act in violation of his or her lawful duty, or secure any improper advantage in order to assist in obtaining or retaining business for or with, or directing business to, any person.

2.      The Republic of Haiti's Penal Code Article 140 prohibited persons from corrupting or attempting to corrupt by promises, offers, gifts, or presents, an official, agent, or officer holding a position in any administrative, judicial, or military public authority, in order to obtain a favorable opinion; records, statements, certificates or assessments contrary to the truth; or positions, employment, adjudications, undertakings or other benefits of any type; or any other action by the department of the official, agent or officer.  The Republic of Haiti's Penal Code Article 137 prohibited any administrative, judicial, or military public official or any agent or officer of a public authority from accepting offers or promises or receiving gifts of promises to perform an action as a function of his position or his job, even one that is innocent but not subject to the payment of salary.

*Entities and Individuals*

*Haiti*

3.      Telecommunications D'Haiti ("Haiti Teleco") was the Republic of Haiti's state-owned national telecommunications company.  Haiti Teleco was the only provider of non-cellular telephone service to and from Haiti.  Various international telecommunications companies

2

contracted with Haiti Teleco to allow those companies' customers to make calls to Haiti. These telecommunications companies would pay Haiti Teleco a set rate for each minute of telephone calls to Haiti.

4.      From in or around March 2001, to in or around June 2003, defendant **PATRICK JOSEPH** was the Director General of Haiti Teleco. In this position, **PATRICK JOSEPH** had overall responsibility for Haiti Teleco and its relationships with international telecommunications companies, including Uniplex Telecom Technologies, Inc., **CINERGY TELECOMMUNICATIONS, INC.**, and Corporation T. It was **PATRICK JOSEPH**'s responsibility to set the Haiti Teleco rate for land line telecommunications, along with the Board of Directors of Haiti Teleco, and to negotiate and sign contracts with telecommunications carriers. During his tenure at Haiti Teleco, **PATRICK JOSEPH** was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

5.      From in or around May 2001, to in or around April 2003, Robert Antoine was the Director of International Relations of Haiti Teleco. In this position, it was Antoine's responsibility to administer contracts with international telecommunications companies on behalf of Haiti Teleco, including Uniplex Telecom Technologies, Inc., **CINERGY TELECOMMUNICATIONS, INC.**, and Corporation T. During his tenure at Haiti Teleco, Antoine was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

6.      From in or around June 2003, to in or around April 2004, defendant **JEAN RENE DUPERVAL** was the Director of International Relations of Haiti Teleco. Similar to his predecessor Robert Antoine, it was **DUPERVAL**'s responsibility to negotiate contracts with international

3

telecommunications companies on behalf of Haiti Teleco.  During his tenure at Haiti Teleco, **DUPERVAL** was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

7.      From in or around August 2001, to in or around March 2004, Official VJ was the Governor of the Banque de la République d'Haiti ("Bank of Haiti"), the state-owned and state-controlled central bank of Haiti.  In this position, Official VJ had ultimate responsibility for the operations of the Bank of Haiti.  Official VJ was **PATRICK JOSEPH**'s father.  During his tenure at the Bank of Haiti, Official VJ was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

*Uniplex and Cinergy*

8.      Uniplex Telecom Technologies, Inc. ("Uniplex") was a privately owned telecommunications company that was incorporated in Florida on or about January 20, 1993, and was headquartered in Miami, Florida.  Uniplex executed a series of contracts with Haiti Teleco that allowed Uniplex's customers to place calls to Haiti.  Uniplex was administratively dissolved by the Florida Department of State on or about September 26, 2008.  Uniplex was a "domestic concern" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

9.      Defendant **CINERGY TELECOMMUNICATIONS, INC.** ("CINERGY"), was a privately owned telecommunications company that was incorporated in Florida on or about March 13, 2001, and headquartered at the same address as Uniplex in Miami, Florida.  **CINERGY** executed a series of contracts with Haiti Teleco that allowed **CINERGY**'s customers to place calls to Haiti, including a contract for calling cards.  **CINERGY** was closely related to Uniplex, sharing its officers, employees, and office space, and the two companies were at times treated as one and the

4

same by Haiti Teleco. **CINERGY** was a "domestic concern" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

10.     Defendant **WASHINGTON VASCONEZ CRUZ** was the President of Uniplex and the President and Chief Operating Officer of **CINERGY**. In these positions, he had authority over the operations of Uniplex and **CINERGY**. **VASCONEZ** was a citizen of the United States. **VASCONEZ** was a "domestic concern" and an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

11.     Co-conspirator CZ was the Vice President of Uniplex and **CINERGY**. In these positions, Co-conspirator CZ was in charge of overseeing Uniplex's and **CINERGY**'s finances. Co-conspirator CZ was a citizen of the United States. Co-conspirator CZ was a "domestic concern" and an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

12.     Defendant **AMADEUS RICHERS** was the Director of Uniplex and **CINERGY**. In these positions, **RICHERS** managed the ongoing business relationship between Uniplex, **CINERGY**, and Haiti Teleco. **RICHERS** was a German citizen and a resident of Brazil. **RICHERS** was an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA. 15 U.S.C. § 78dd-2(h)(1).

*Corporation T*

13.     Corporation T was a privately owned telecommunications company, headquartered in Miami, Florida, that was incorporated in Nevada on or about July 1, 1996, and incorporated in Florida on or about February 2, 2002. Corporation T executed a series of contracts with Haiti Teleco

that allowed Corporation T's customers to place calls to Haiti. Corporation T was a "domestic concern" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

14.     Joel Esquenazi was the President and Director of Corporation T. In this position, he negotiated and signed contracts with Haiti Teleco on behalf of Corporation T. Esquenazi had signatory authority over Corporation T's bank accounts and had an approximately 75% ownership interest in Corporation T. Esquenazi was a citizen of the United States. Esquenazi was a "domestic concern" and an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

15.     Carlos Rodriguez was the Executive Vice President of Corporation T. In this position, Rodriguez was in charge of overseeing Corporation T's finances. Rodriguez had signatory authority over Corporation T's bank accounts and had an approximately 20% ownership interest in Corporation T. Rodriguez was a lawful permanent resident of the United States. Rodriguez was a "domestic concern" and an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

16.     The General Counsel ("General Counsel") was the Vice President and General Counsel for Corporation T. In this position, the General Counsel drafted, negotiated and reviewed contracts, among other things. He had an approximately 5% ownership interest in Corporation T. The General Counsel was a citizen of the United States. The General Counsel was a "domestic concern" and an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

*Intermediaries*

17.     Juan Diaz served as an intermediary for bribe payments made (a) by Uniplex and **CINERGY** to Robert Antoine and **PATRICK JOSEPH** from in or around November 2001, until in or around at least October 2003, and (b) by Corporation T to Robert Antoine from in or around November 2001, until in or around at least October 2003. In or around November 2001, Diaz opened a business checking account at Kislak National Bank in Miami, Florida, in the name of JD Locator Services, Inc. ("JD Locator-Miami"). On or about August 19, 2002, Diaz incorporated JD Locator-Miami in Florida, listing its principal address as located in Miami, Florida. JD Locator-Miami did not have a physical location or a bank account in Haiti. Diaz was a citizen of the United States. Diaz was a "domestic concern" and an agent of a domestic concern as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

18.     Jean Fourcand worked as an intermediary, helping Uniplex and **CINERGY**, Corporation T, Juan Diaz and JD Locator-Miami, and Robert Antoine and **PATRICK JOSEPH**. From in or around November 2001, until in or around August 2002, Fourcand received funds from Uniplex and **CINERGY** and from Corporation T through JD Locator-Miami. He continued to conduct financial transactions with these funds through June 2005. Fourcand incorporated Fourcand Enterprises, Inc., on or about January 17, 2002, in Florida, listed its principal address as Miami, Florida, acted as its Director, and opened a bank account at First Union Bank in Miami, Florida. Fourcand was a citizen of the United States. Fourcand was a "domestic concern" and an officer, employee, and agent of a domestic concern as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

7

19.     Defendant **MARGUERITE GRANDISON** served as an intermediary between Corporation T, Uniplex and **CINERGY** and her brother, **JEAN RENE DUPERVAL**. **GRANDISON** was the President of Telecom Consulting Services Corp. ("Telecom Consulting"), a Florida corporation incorporated on or about October 16, 2003, with its principal place of business in Miramar, Florida. On or about November 18, 2003, **GRANDISON** opened a business checking account in the name of Telecom Consulting with SouthTrust Bank in Miami, Florida. **GRANDISON** was a lawful permanent resident of the United States. **GRANDISON** was a "domestic concern" and an officer, employee, and agent of a domestic concern as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

20.     After leaving Haiti Teleco, Robert Antoine was hired by Uniplex and **CINERGY** as a consultant. Antoine's primary role was to help Uniplex and **CINERGY** with their business with Haiti Teleco and to serve as an intermediary between Uniplex and **CINERGY** and **JEAN RENE DUPERVAL**. On or about November 5, 2003, Antoine incorporated Process Consulting, Inc. ("Process Consulting"), with a headquarters and bank account in Miami, Florida. Antoine used Process Consulting to receive payments from Uniplex and to make payments to Telecom Consulting for **DUPERVAL**'s benefit on behalf of Uniplex and **CINERGY**. During his tenure at Uniplex and **CINERGY**, Antoine was an officer, employee, and agent of a domestic concern, as these terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

8

## COUNT 1
### Conspiracy
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 12 and 17 through 20 of the General Allegations to this Superseding Indictment are re-alleged and incorporated by reference as though set forth herein.

2.      From in or around December 2001, through in or around January 2006, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### WASHINGTON VASCONEZ CRUZ,
### AMADEUS RICHERS,
### and
### CINERGY TELECOMMUNICATIONS, INC.,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate and agree with each other, and with other persons, known and unknown to the Grand Jury, including **MARGUERITE GRANDISON**, Co-conspirator CZ, Uniplex, Juan Diaz, JD Locator-Miami, Jean Fourcand, Fourcand Enterprises, Robert Antoine, Process Consulting, and Telecom Consulting, to commit offenses against the United States, that is:

(a)      to knowingly make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official, or any person, while knowing that all or a part of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such

9

official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY TELECOMMUNICATIONS, INC. ("CINERGY"), MARGUERITE GRANDISON**, Co-conspirator CZ, Uniplex, Juan Diaz, JD Locator-Miami, Jean Fourcand, Fourcand Enterprises, Robert Antoine, Process Consulting, and Telecom Consulting, and others known and unknown to the Grand Jury, in obtaining and retaining business for and with, and directing business to Uniplex and **CINERGY**, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a); and

(b)    to knowingly, and with intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSES OF THE CONSPIRACY

3.    A purpose of the conspiracy was for the defendants to unjustly enrich themselves by having **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and **CINERGY**, along with **MARGUERITE GRANDISON**, Co-conspirator CZ, Uniplex, Juan Diaz, JD Locator-Miami, Jean Fourcand, Fourcand Enterprises, Robert Antoine, Process Consulting, Telecom Consulting, and others known and unknown to the Grand Jury, provide bribe payments to Robert Antoine, **JEAN RENE DUPERVAL, PATRICK JOSEPH**, and Official VJ, in exchange for business advantages

10

to be bestowed upon Uniplex and **CINERGY** by Haiti Teleco. These business advantages to Uniplex and **CINERGY** included, but were not limited to, preferred telecommunications rates and credits toward sums owed. It was a further purpose of the conspiracy to defraud Haiti Teleco of revenue by obtaining these advantages for Uniplex and **CINERGY**.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY**, and their co-conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

4.     **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ would authorize the payment of bribes on behalf of Uniplex and **CINERGY** to various Haitian officials who could affect Uniplex and **CINERGY**'s ability to obtain or retain business with Haiti Teleco, including Robert Antoine, as Director of International Relations of Haiti Teleco, **JEAN RENE DUPERVAL**, also as Director of International Relations of Haiti Teleco, **PATRICK JOSEPH** as Director General of Haiti Teleco, and Official VJ, as Governor of the Bank of Haiti.

5.     Uniplex and **CINERGY** would make bribe payments to Robert Antoine, **JEAN RENE DUPERVAL, PATRICK JOSEPH**, and Official VJ and, in exchange, would receive various business advantages.

6.     To disguise the true nature of the bribe payments, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ would cause payments to be made for fictional "consulting services" to intermediary companies chosen by Robert Antoine, **JEAN RENE DUPERVAL, PATRICK JOSEPH**, and Official VJ. To aid in the concealment of the bribe

11

payments, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ would cause Uniplex and **CINERGY** to put false notations on financial, banking, and accounting documents.

7.     One of the intermediary companies used to conceal and disguise the bribe payments was JD Locator-Miami, a shell entity controlled by Juan Diaz.  Co-conspirator CZ would issue checks from Uniplex's bank account to JD Locator-Miami that Juan Diaz would deposit into JD Locator-Miami's bank account at Kislak National Bank.  Over the course of the conspiracy, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ would cause over $333,000 in checks to be issued to JD Locator-Miami by Uniplex for no legitimate business purpose. It was their intention that the funds would be used to provide an illicit benefit to **PATRICK JOSEPH** and Robert Antoine.

8.     At **PATRICK JOSEPH**'s direction, Juan Diaz and Jean Fourcand would disburse the funds from the JD Locator-Miami account by writing and cashing checks from that account and by purchasing cashier's checks for **PATRICK JOSEPH**'s benefit.  To help conceal their activities, Juan Diaz and Jean Fourcand would keep any cash transactions ordered by **PATRICK JOSEPH** under $10,000 to avoid currency reporting requirements that applied to cash transactions of $10,000 or more.

9.     At Robert Antoine's direction, Juan Diaz would disburse the funds from the JD Locator-Miami bank account by: (1) sending wire transfers to Antoine's Washington Mutual bank account; (2) issuing checks made payable to Antoine, which were then deposited into Antoine's Washington Mutual bank account; (3) withdrawing currency to be given to Antoine, some of which

was then deposited into Antoine's Washington Mutual bank account; and (4) sending funds to family members of Antoine and others at Antoine's direction.

10.     At times, Juan Diaz would also write checks to Fourcand Enterprises. Diaz would then give the checks to Jean Fourcand to deposit in the Fourcand Enterprises account. These funds would later be used in a joint real estate investment deal for the benefit of Fourcand and Antoine.

11.     **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ would also cause bribe payments to be made to **PATRICK JOSEPH** and Official VJ. Co-conspirator CZ would issue checks in the name of "J.D. Locator Services," but instead of giving these checks to Juan Diaz, **VASCONEZ, RICHERS**, and Co-conspirator CZ would cause them to be sent to **PATRICK JOSEPH** in Haiti (the "JD Locator-Haiti" checks). **VASCONEZ, RICHERS**, and Co-conspirator CZ would cause these checks to be sent knowing that there was no business called "J.D. Locator Services" at the Haitian address listed on the checks. Over the course of the conspiracy, Co-conspirator CZ would cause over $815,000 worth of checks to be sent to Haiti on behalf of **PATRICK JOSEPH** and Official VJ in this manner.

12.     Official VJ would use his position as the Governor of the Bank of Haiti to cause the JD Locator-Haiti checks to be negotiated at the Bank of Haiti. Official VJ would then cause wire transfers to be made, checks to be issued, and cash to be withdrawn for his benefit and the benefit of his friends and family. Official VJ would also transfer illegal funds in his bank account to **PATRICK JOSEPH**.

13.     After **JEAN RENE DUPERVAL** assumed the role of Director of International Relations, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ would cause bribe payments to be made to **DUPERVAL** through the intermediary company

13

Telecom Consulting. At the time that **DUPERVAL** assumed this position, **CINERGY** had used most of its pre-paid minute credits that it had received on favorable terms from Robert Antoine, **PATRICK JOSEPH**, and Official VJ. **VASCONEZ, RICHERS**, and Co-conspirator CZ would seek to extend **CINERGY**'s favorable treatment and to receive more pre-paid minute credits by bribing **DUPERVAL**. Over the course of the conspiracy, Co-conspirator CZ would cause over $257,000 worth of checks to be issued to Telecom Consulting on behalf of **DUPERVAL**. To conceal the bribery, Co-conspirator CZ would include false memos on the checks.

14.     When Robert Antoine went to work for Uniplex and **CINERGY**, he acted as an additional intermediary. Antoine would receive funds from Uniplex in the name of Process Consulting and then issue checks from Process Consulting to Telecom Consulting, intending that the funds actually be transferred to **JEAN RENE DUPERVAL**. Over the course of the conspiracy, Antoine would transmit at least $22,500 worth of illicit payments in this manner, with the authorization of **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, and Co-conspirator CZ. Telecom Consulting would not perform any consulting services of any kind for Uniplex, **CINERGY**, or any other telecommunications company.

15.     **MARGUERITE GRANDISON** would receive checks from Uniplex, **CINERGY**, and Process Consulting and deposit them into Telecom Consulting's bank account. At **JEAN RENE DUPERVAL**'s direction, **GRANDISON** would disburse the funds received by: (1) issuing checks from Telecom Consulting's account made payable to **DUPERVAL**, which were then deposited into **DUPERVAL**'s bank accounts; (2) issuing checks from Telecom Consulting's account made payable to **DUPERVAL**, which were then caused to be cashed by **DUPERVAL**; (3) issuing checks from Telecom Consulting's account made payable to **DUPERVAL**'s family, which were

14

then deposited into **DUPERVAL**'s bank accounts; (4) withdrawing currency from Telecom Consulting's account on behalf of **DUPERVAL**; and (5) making purchases with funds from Telecom Consulting's account for the benefit of **DUPERVAL**.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects and purposes thereof, at least one of the conspirators committed, or caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

*JD Locator-Miami Payments*

1.     On or about December 20, 2001, **WASHINGTON VASCONEZ CRUZ**, **AMADEUS RICHERS, CINERGY**, and Co-conspirator CZ caused a check to be issued from Uniplex's Bank Atlantic bank account, made payable to a third party, in the approximate amount of $22,500.

On or about the following dates, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY**, and Co-conspirator CZ caused checks to be issued from Uniplex's Bank Atlantic bank account, made payable to JD Locator-Miami, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Memo |
|-----------|-------------------------------|--------------------|------|
| 2 | January 7, 2002 | $140,000.00 | Invoice 073004 |
| 3 | May 16, 2002 | $61,308.42 | Invoice 079.017 |
| 4 | July 15, 2002 | $34,993.81 | Invoice 079.448 |
| 5 | August 12, 2002 | $60,000.00 | Invoice 079.602 |

6.     On or about August 8, 2003, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY**, and Co-conspirator CZ caused a cashier's check to be issued from

15

Uniplex's Bank Atlantic bank account, made payable to JD Locator-Miami, in the approximate amount of $15,000.

On or about the following dates, Juan Diaz caused checks to be issued from JD Locator-Miami's Kislak bank account, payable to Robert Antoine in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Memo |
|---|---|---|---|
| 7 | August 19, 2002 | $69,750 | Inv# 57645 |
| 8 | November 20, 2002 | $4,900 | Inv 21571 |
| 9 | November 25, 2002 | $4,950 | Inv 21575 |
| 10 | December 5, 2002 | $4,800 | Inv# 21603 |
| 11 | December 10, 2002 | $4,800 | Inv 21614 |
| 12 | December 21, 2002 | $2,465 | Inv 21654 |
| 13 | February 3, 2003 | $4,900 | Inv 037351 |
| 14 | February 7, 2003 | $2,380 | Inv 037382 |
| 15 | February 11, 2003 | $4,900 | Inv 037402 |
| 16 | February 18, 2003 | $4,900 | Inv 037453 |
| 17 | February 21, 2003 | $3,700 | Inv 037492 |
| 18 | March 25, 2003 | $4,500 | Inv 037536 |
| 19 | March 27, 2003 | $4,500 | Inv 037579 |
| 20 | April 7, 2003 | $4,500 | Inv 037612 |
| 21 | April 14, 2003 | $4,500 | Inv 037647 |
| 22 | April 25, 2003 | $4,500 | Inv 037725 |

On or about the following dates, Juan Diaz caused wire transfers to be made from JD Locator-Miami's Kislak bank account to Robert Antoine's Washington Mutual Bank account, in the following amounts:

16

| Overt Act | Approximate Date of Wire Transfer | Approximate Amount |
|-----------|-----------------------------------|--------------------|
| 23 | May 31, 2002 | $58,223 |
| 24 | July 22, 2002 | $33,000 |
| 25 | July 30, 2002 | $46,500 |
| 26 | August 9, 2002 | $37,200 |

27.     On or about August 15, 2003, Juan Diaz cashed a check made payable to himself from the JD Locator-Miami Kislak bank account for $9,000.

28.     On or about August 19, 2003, Juan Diaz cashed a check made payable to himself from the JD Locator-Miami Kislak bank account for $5,000.

On or about the following dates, Juan Diaz and Jean Fourcand caused cashiers checks to be issued from Kislak National Bank to friends of **PATRICK JOSEPH** for the benefit of **PATRICK JOSEPH**, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Remitter |
|-----------|-------------------------------|--------------------|----------|
| 29 | February 5, 2002 | $70,000.00 | J.D. Locator Services, Inc. |
| 30 | February 6, 2002 | $70,000.00 | Jean Fourcand |

*JD Locator-Haiti Checks*

On or about the following dates, **WASHINGTON VASCONEZ CRUZ**, **AMADEUS RICHERS**, **CINERGY**, and Co-conspirator CZ caused checks to be issued from Uniplex's Bank Atlantic bank account, made payable to JD Locator Services, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount |
|-----------|-------------------------------|--------------------|
| 31 | March 5, 2002 | $257,385.59 |

17

| 32 | May 22, 2002 | $61,116.84 |
| 33 | July 15, 2002 | $102,094.26 |
| 34 | August 9, 2002 | $185,000 |
| 35 | August 30, 2002 | $60,000 |
| 36 | February 25, 2003 | $150,000 |

*Telecom Consulting Payments*

37.    On or about November 18, 2003, **MARGUERITE GRANDISON** caused a checking account to be opened at SouthTrust Bank for Telecom Consulting, in accordance with an October 19, 2003, electronic mail communication from **JEAN RENE DUPERVAL** that Telecom Consulting had been created and that a bank account could now be opened.

38.    On or about December 17, 2003, **WASHINGTON VASCONEZ CRUZ**, **AMADEUS RICHERS**, **CINERGY**, Co-conspirator CZ, and Robert Antoine caused a check to be issued from **CINERGY**'s Bank Atlantic bank account, made payable to Telecom Consulting, in the approximate amount of $45,230.00, with a memo that read "Interconnection services."

On or about the following dates, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY**, Co-conspirator CZ, and Robert Antoine caused checks to be issued from Uniplex's Bank Atlantic bank account, made payable to Telecom Consulting, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Memo |
|---|---|---|---|
| 39 | January 6, 2004 | $47,452.98 | International Minutes fron [sic] USA - Haiti |
| 40 | February 17, 2004 | $46,452.68 | International Minutes fron [sic] USA - Haiti |

18

| 41 | March 5, 2004 | $47,009.66 | International Minutes fron [sic] USA - Haiti |
| 42 | April 16, 2004 | $41,170.00 | Invoice # 033104 |
| 43 | June 11, 2004 | $30,024.36 | Invoice 043004 |

On or about the following dates, **WASHINGTON VASCONEZ CRUZ**, **AMADEUS RICHERS**, **CINERGY**, Co-conspirator CZ, and Robert Antoine caused checks to be issued from Process Consulting's Citibank bank account, made payable to Telecom Consulting, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Memo |
| --- | --- | --- | --- |
| 44 | April 19, 2004 | $7,532 | Commission's fees March 04 |
| 45 | June 12, 2004 | $15,000 | Commission's fees |

On or about the following dates, **MARGUERITE GRANDISON** caused checks to be issued from Telecom Consulting's SouthTrust bank account, which were payable to **JEAN RENE DUPERVAL** and subsequently deposited into **DUPERVAL**'s University Credit Union account, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Memo |
| --- | --- | --- | --- |
| 46 | March 1, 2004 | $8,000 | none |
| 47 | April 30, 2004 | $8,235 | none |
| 48 | July 12, 2004 | $2,596.50 | none |
| 49 | July 28, 2004 | $2,596.50 | payroll 7/04 |
| 50 | August 27, 2004 | $2,596.50 | payroll 8/04 |
| 51 | September 20, 2004 | $2,596.50 | payroll-9/04 |

19

| 52 | December 23, 2004 | $3,000 | Bonus 2004 |

On or about the following dates, **MARGUERITE GRANDISON** caused checks to be issued from Telecom Consulting's SouthTrust bank account, payable to **JEAN RENE DUPERVAL**, which were subsequently deposited into **DUPERVAL**'s Wachovia bank accounts, in the following amounts:

| Overt Act | Approximate Date Check Issued | Approximate Amount | Memo |
|---|---|---|---|
| 53 | July 28, 2004 | $5,473.64 | travel expenses, office supplies |
| 54 | October 20, 2004 | $2,596.50 | none |

On or about the following dates, **MARGUERITE GRANDISON** caused checks to be issued from Telecom Consulting's SouthTrust bank account, which were made payable to **JEAN RENE DUPERVAL**, and which **DUPERVAL** subsequently caused to be cashed, in the following amounts:

| Overt Act | Approximate Date Check Issued | Amount | Memo |
|---|---|---|---|
| 55 | June 24, 2004 | $2,500 | none |
| 56 | December 15, 2004 | $2,500 | none |
| 57 | March 29, 2005 | $3,000 | none |

58.    On or about June 22, 2004, **MARGUERITE GRANDISON** caused a cashier's check to be issued, made payable to Statewide Title Co. for approximately $95,727.55 to be used for the purchase of a house for **JEAN RENE DUPERVAL**.

20

*Additional Overt Acts*

59.     On or about October 25, 2001, **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS**, **CINERGY**, and Co-conspirator CZ caused **CINERGY**'s attorney to sign a Sales and Distribution Agreement with **PATRICK JOSEPH**, which contained favorable terms.

60.     On or about August 23, 2002, **AMADEUS RICHERS** wrote a letter agreement, countersigned by Robert Antoine, and authorized by **WASHINGTON VASCONEZ CRUZ** and Co-conspirator CZ, concerning the October 25, 2001, Sales and Distribution Agreement referenced in Overt Act 59. The letter agreement provided that **CINERGY** would be "entitled to terminate a minimum amount of 85,324,950 minutes to the Republic of Haiti for a total payment of $3,700,000" and that **CINERGY**'s interests would be guaranteed by a $6,000,000 letter of credit, which **PATRICK JOSEPH** and Official VJ had caused the Bank of Haiti to issue to **CINERGY** on or about March 27, 2002.

61.     On or about March 5, 2004, **AMADEUS RICHERS** signed a letter agreement with **JEAN RENE DUPERVAL**, with the authorization of **WASHINGTON VASCONEZ CRUZ** and Co-conspirator CZ, in which Haiti Teleco agreed to give **CINERGY** an additional credit of approximately 11,189,934 minutes that it could terminate at Haiti Teleco at no cost, in exchange for "continuing services."

All in violation of Title 18, United States Code, Section 371.

21

## COUNTS 2-7
### Violations of the Foreign Corrupt Practices Act
### (15 U.S.C. § 78dd-2(a); 18 U.S.C. § 2)

1.      Paragraphs 1 though 12 and 17 through 20 of the General Allegations and paragraphs 4 through 15 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth herein.

2.      On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### WASHINGTON VASCONEZ CRUZ,
### AMADEUS RICHERS,
### and
### CINERGY TELECOMMUNICATIONS, INC.,

who were domestic concerns and officers, employees and agents of domestic concerns within the meaning of the FCPA, willfully made use of, and aided, abetted, and caused others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official, and to any person, while knowing that the money and thing of value will be offered, given, and promised, directly and indirectly, to any foreign official for the purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist defendants **VASCONEZ**, **RICHERS**, **CINERGY**, Co-conspirator CZ, and others known

22

and unknown to the Grand Jury, in obtaining and retaining business for and with, and directing

business to **CINERGY** and Uniplex, as follows:

| Count | Approximate Date of Money Transfer | Use of Instrumentality of Interstate Commerce | Intended Foreign Official Beneficiary |
|-------|------------------------------------|-----------------------------------------------|---------------------------------------|
| 2 | December 17, 2003 | Issuance of a $45,230.00 check from **CINERGY**'s Bank Atlantic bank account | **JEAN RENE DUPERVAL** |
| 3 | January 6, 2004 | Issuance of a $47,452.98 check from Uniplex's Bank Atlantic bank account | **JEAN RENE DUPERVAL** |
| 4 | February 17, 2004 | Issuance of a $46,452.68 check from Uniplex's Bank Atlantic bank account | **JEAN RENE DUPERVAL** |
| 5 | March 5, 2004 | Issuance of a $47,009.66 check from Uniplex's Bank Atlantic bank account | **JEAN RENE DUPERVAL** |
| 6 | April 16, 2004 | Issuance of a $41,170.00 check from Uniplex's Bank Atlantic bank account | **JEAN RENE DUPERVAL** |
| 7 | June 11, 2004 | Issuance of a $30,024.36 check from Uniplex's Bank Atlantic bank account | **JEAN RENE DUPERVAL** |

In violation of Title 15, United States Code, Section 78dd-2(a) and Title 18, United States

Code, Section 2.

23

## COUNT 8
### Cinergy Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 12 and 17 through 20 of the General Allegations of this

Superseding Indictment are re-alleged and incorporated by reference as though set forth herein.

2.      From in or around December 2001, through in or around July 2008, the exact dates

being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and

elsewhere, the defendants,

**WASHINGTON VASCONEZ CRUZ,**
**AMADEUS RICHERS,**
**CINERGY TELECOMMUNICATIONS, INC.,**
**PATRICK JOSEPH,**
**JEAN RENE DUPERVAL,**
**and**
**MARGUERITE GRANDISON,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine,

conspire, confederate, and agree with each other and with other persons known and unknown to the

Grand Jury, including Co-conspirator CZ, Uniplex, Robert Antoine, Process Consulting, Juan Diaz,

JD Locator-Miami, Jean Fourcand, and Fourcand Enterprises, to commit offenses under Title 18,

United States Code, Sections 1956 and 1957, that is:

(a)      knowing that the property involved in the financial transaction represented the

proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and

foreign commerce, which financial transactions involved the proceeds of specified unlawful activity,

knowing that the transactions were designed in whole and in part to conceal and disguise the nature,

the location, the source, the ownership, and the control of the proceeds of said specified unlawful

activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

24

(b)     to engage in a monetary transaction by, through, and to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000.00, that is, the deposit, withdrawal, transfer and exchange of U.S. currency, funds and monetary instruments, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

## PURPOSES OF THE CONSPIRACY

3.     The purposes of the conspiracy were for **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY TELECOMMUNICATIONS, PATRICK JOSEPH, JEAN RENE DUPERVAL**, and **MARGUERITE GRANDISON**, and their co-conspirators to conceal the bribe payments paid on behalf of Uniplex and **CINERGY** to Robert Antoine, **JEAN RENE DUPERVAL**, and **PATRICK JOSEPH** by conducting financial transactions with the illegal proceeds in such a manner as to conceal the nature and the source of the proceeds, and to use the illegal proceeds in monetary transactions that were conducted in amounts over $10,000.

## MANNER AND MEANS OF THE CONSPIRACY

4.     Paragraphs 4 through 15 of the Manner and Means section of Count 1 of this Superseding Indictment are re-alleged and incorporated by reference herein as a description of the manner and means, among others, by which **WASHINGTON VASCONEZ CRUZ, AMADEUS RICHERS, CINERGY TELECOMMUNICATIONS, PATRICK JOSEPH, JEAN RENE DUPERVAL**, and **MARGUERITE GRANDISON**, and their co-conspirators sought to accomplish the objects and purposes of the conspiracy.

5.     It is further alleged that the specified unlawful activities are violations of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a); violations of the criminal

25

bribery laws of Haiti, The Republic of Haiti's Penal Code Articles 137 and 140; and wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 9
### Corporation T Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 3, 5 through 6, and 13 through 20 of the General Allegations of this Superseding Indictment are re-alleged and incorporated by reference as though set forth herein.

2.      From in or around October 2003, through in or around January 2006, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### JEAN RENE DUPERVAL
### and
### MARGUERITE GRANDISON,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, including Joel Esquenazi, Carlos Rodriguez, the General Counsel, Corporation T, Juan Diaz, JD Locator-Miami, and Telecom Consulting, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, that is:

(a)      knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole and in part to conceal and disguise the nature,

26

the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b)    to engage in a monetary transaction by, through, and to a financial institution, in and affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000.00, that is, the deposit, withdrawal, transfer and exchange of U.S. currency, funds and monetary instruments, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

## PURPOSES OF THE CONSPIRACY

3.    The purposes of the conspiracy were for **JEAN RENE DUPERVAL** and **MARGUERITE GRANDISON**, and their co-conspirators, including Joel Esquenazi, Carlos Rodriguez, the General Counsel, Corporation T, Juan Diaz, JD Locator-Miami, and Telecom Consulting, to conceal the bribe payments paid to **DUPERVAL** on behalf of Corporation T by conducting financial transactions with the illegal proceeds in such a manner as to conceal the nature and the source of the proceeds, and to use the illegal proceeds in monetary transactions which were conducted in amounts over $10,000.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **JEAN RENE DUPERVAL**, **MARGUERITE GRANDISON**, and their co-conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

4.    Joel Esquenazi and Carlos Rodriguez would authorize the payments of bribes on behalf of Corporation T to the Director of International Relations of Haiti Teleco, **JEAN RENE DUPERVAL**.

27

5.      To disguise the true nature of the bribe payments, Joel Esquenazi and Carlos Rodriguez would cause payments to be made for fictional "consulting services" to an intermediary company chosen by **JEAN RENE DUPERVAL**. To aid in the concealment of the bribe payments, Esquenazi and Rodriguez would cause Corporation T to falsely record these payments as "commissions" or "consulting fees" on financial, banking, and accounting documents.

6.      Joel Esquenazi and the General Counsel would assist in the incorporation of Telecom Consulting as a shell company used as an intermediary to conceal bribe payments from Esquenazi and Carlos Rodriguez to **JEAN RENE DUPERVAL**. **DUPERVAL**'s sister, **MARGUERITE GRANDISON**, would be listed as Telecom Consulting's President and was its sole officer. Corporation T's General Counsel would be listed as the registered agent of Telecom Consulting.

7.      With the aid of Joel Esquenazi, **MARGUERITE GRANDISON** would establish a bank account in the name of Telecom Consulting and list herself as the sole signatory on that account. Esquenazi and Carlos Rodriguez would direct that bribe payments for **JEAN RENE DUPERVAL** be paid to Telecom Consulting. Over the course of the conspiracy, the bank account of Telecom Consulting would receive over $70,000 from Corporation T in bribes via wire transfers and an intrabank transfer from Corporation T. Telecom Consulting would not perform any consulting services of any kind for Corporation T or any other telecommunications company.

8.      **MARGUERITE GRANDISON**, at **JEAN RENE DUPERVAL**'s direction, would disburse the funds received from Corporation T and deposited into Telecom Consulting's bank account by: (1) issuing checks from Telecom Consulting's account made payable to **DUPERVAL**, which were then deposited into **DUPERVAL**'s bank accounts; (2) issuing checks from Telecom Consulting's account made payable to **DUPERVAL,** which were then caused to be cashed by

28

**DUPERVAL**; (3) issuing checks from Telecom Consulting's account made payable to **DUPERVAL**'s family, which were then deposited into **DUPERVAL**'s bank accounts; (4) withdrawing currency from Telecom Consulting's account on behalf of **DUPERVAL**; and (5) making purchases with funds from Telecom Consulting's account for the benefit on **DUPERVAL**.

9.    It is further alleged that the specified unlawful activities are violations of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a); violations of the criminal bribery laws of Haiti, The Republic of Haiti's Penal Code Articles 137 and 140; and wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 10 - 28**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2)**

1.    On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**WASHINGTON VASCONEZ CRUZ,**
**AMADEUS RICHERS,**
**CINERGY TELECOMMUNICATIONS, INC.,**
**JEAN RENE DUPERVAL,**
**and**
**MARGUERITE GRANDISON,**

knowingly conducted and attempted to conduct, and aided and abetted, the following financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and that the financial transactions were

29

designed, in whole and in part, to conceal and disguise the nature, the location, the source, the

ownership, and the control of the proceeds of said specified unlawful activity:

| Count | Approximate Date | Financial Transaction |
|-------|------------------|----------------------|
| 10 | March 1, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $8,000 |
| 11 | June 2, 2004 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $3,294 |
| 12 | June 2, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $8,235 |
| 13 | June 25, 2004 | A Telecom Consulting check caused to be cashed by **JEAN RENE DUPERVAL** for approximately $2,500 |
| 14 | July 13, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,596.50 |
| 15 | July 13, 2004 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,518.50 |
| 16 | July 28, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,596.50 |
| 17 | July 29, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** Wachovia Bank Accounts for approximately approximately $5,473.64 |
| 18 | August 6, 2004 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** Wachovia Bank Account for approximately approximately $2,518.50 |

| 19 | August 27, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,596.50 |
|----|-----------------|------------------------------------------------------------------------------------------------------------------------------|
| 20 | August 27, 2004 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,518.50 |
| 21 | September 20, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,596.50 |
| 22 | September 20, 2004 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $2,518.50 |
| 23 | October 22, 2004 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** Wachovia Bank account for approximately $2,596.50 |
| 24 | October 25, 2004 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** University Credit Union account for approximately $2,518.50 |
| 25 | January 6, 2005 | A Telecom Consulting check caused to be cashed by **JEAN RENE DUPERVAL** for approximately $2,500 |
| 26 | January 6, 2005 | A Telecom Consulting check deposited into **JEAN RENE DUPERVAL's** University Credit Union Account for approximately $3,000 |
| 27 | January 7, 2005 | A Telecom Consulting check, made payable to a third party, deposited into **JEAN RENE DUPERVAL's** Wachovia Bank account for approximately $1,000 |
| 28 | March 29, 2005 | A Telecom Consulting check caused to be cashed by **JEAN RENE DUPERVAL** for $3,000 |

2.    It is further alleged that the specified unlawful activities are violations of the Foreign

Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a); violations of the criminal

31

bribery laws of Haiti, The Republic of Haiti's Penal Code Articles 137 and 140; and wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## CRIMINAL FORFEITURE

1. Paragraphs 1 through 20 of the General Allegations of this Superseding Indictment and the violations alleged in Counts 1 through 28 of this Superseding Indictment are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of property in which one or more of the defendants has an interest.

2. Upon conviction of any of the offenses alleged in Counts 1 through 7 of this Superseding Indictment, the defendants so convicted shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said offense(s).

3. Upon conviction of any of the offenses alleged in Counts 8 through 28 of this Superseding Indictment, the defendants so convicted shall forfeit to the United States any property, real or personal, involved in such offense or any property traceable to such property.

4. The property subject to forfeiture includes, but is not limited to:

    A.    $1,429,270.60 in United States currency, representing the amount of proceeds derived from the conspiracy alleged in Count 1;

    B.    $257,339.68 in United States currency, representing the amount of proceeds constituting or derived from offenses alleged in Counts 2 through 7;

    C.    all money or other property that was the subject of each transaction, transportation, transmission, or transfer in violation of Title 18, United States Code, Section 1956;

32

D.     all commissions, fees, and other property constituting proceeds obtained as a result of a violation of Title 18, United States Code, Section 1956;

E.     all property used in any manner or part to commit or to facilitate the commission of a violation of Title 18, United States Code, Section 1956; and

F.     all property traceable to the money or other property subject to forfeiture under categories C, D, and E, above.

*Substitute Assets Provision*

5.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

A.     cannot be located upon the exercise of due diligence;

B.     has been transferred or sold to, or deposited with, a third party;

C.     has been placed beyond the jurisdiction of the court;

D.     has been substantially diminished in value; or

E.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

6.     If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

33

All pursuant to Title 18, United States Code, Section 981(a)(1)(c) made applicable hereto by Title 28, United States Code, Section 2461; Title 18, United States Code, Sections 982(a)(1) and (b)(2) and the procedures outlined in Title 21, United States Code, Section 853, and set forth in Federal Rule of Criminal Procedure 32.2.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

This _12_ day of _July_____, 2011

WIFREDO A. FERRER
UNITED STATES ATTORNEY

DENIS J. McINERNEY, CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

Nicola J. Mrazek
Senior Trial Attorney

James M. Koukios
Senior Trial Attorney

34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. 09-21010-CR-JEM(s) |
|---|---|

vs.

**CERTIFICATE OF TRIAL ATTORNEY\***

WASHINGTON VASCONEZ CRUZ, et al.,

_____ **Defendants** _____/

**Superseding Case Information:**

**Court Division**: (Select One)

| | | |
|---|---|---|
| X | Miami | _____ Key West |
| _____ | FTL | _____ WPB _____ FTP |

New Defendant(s)          Yes   X    No _____
Number of New Defendants                4
Total number of counts                 28

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:     (Yes or No)    Yes
    List language and/or dialect    Creole

4.  This case will take    15    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                          (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | | _____ |
| II | 6 to 10 days | _____ | Minor | | |
| III | 11 to 20 days | X | Misdem. | | |
| IV | 21 to 60 days | _____ | Felony | | X |
| V | 61 days and over | _____ | | | |

6.  Has this case been previously filed in this District Court? (Yes or No)    Yes
    If yes:
    Judge:    Martinez                    Case No.    09-21010-CR
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    No
    If yes:
    Magistrate Case No.
    Related Miscellaneous numbers:    09-20346-CR-JEM and 09-20347-CR-JEM
    Defendant(s) in federal custody as of
    Defendant(s) in state custody as of
    Rule 20 from the    _____    District of    _____

    Is this a potential death penalty case? (Yes or No)    No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    X    No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____ Yes    X    No

_____
JAMES M. KOUKIOS
DOJ TRIAL ATTORNEY
COURT ID NO. A5500915

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Washington Vasconez Cruz   **Case No:**   09-21010-CR-JEM(s)

Count #:     1

Conspiracy

18 U.S.C. § 371

**\*Max Penalty**:     5 years' imprisonment

Counts #:     2 - 7

Violations of the Foreign Corrupt Practices Act

15 U.S.C. § 78dd-2(a)

**\*Max Penalty**:     5 years' imprisonment

Count #     8

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max Penalty**:     20 years' imprisonment

Counts #:     10 - 28

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max Penalty**:     20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Amadeus Richers   **Case No:**   09-21010-CR-JEM(s)

Count #:      1

Conspiracy

18 U.S.C. § 371

**\*Max Penalty**:      5 years' imprisonment

Counts #:      2 - 7

Violations of the Foreign Corrupt Practices Act

15 U.S.C. § 78dd-2(a)

**\*Max Penalty**:      5 years' imprisonment

Count #      8

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max Penalty**:      20 years' imprisonment

Counts #:      10 - 28

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max Penalty**:      20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   Patrick Joseph               **Case No:**   09-21010-CR-JEM(s)

Count #:          8

_____Money Laundering Conspiracy_____

_____18 U.S.C. § 1956(h)_____

**\*Max Penalty:**          20 years' imprisonment_____

Count #:

_____

_____

**\*Max Penalty**:_____

Count #

_____

_____

**\*Max Penalty**:_____

Count #:

_____

_____

**\*Max Penalty:**_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   Jean Rene Duperval        **Case No:**   09-21010-CR-JEM(s)

Counts #:      8, 9

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max Penalty**:        20 years' imprisonment

Counts #:      10 - 28

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max Penalty**:        20 years' imprisonment

Count #:

**\*Max Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Marguerite Grandison          **Case No:**   09-21010-CR-JEM(s)

Counts #:      8, 9

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max Penalty**:          20 years' imprisonment

Counts #:      10 - 28

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max Penalty**:          20 years' imprisonment

Count #:

**\*Max Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**